STATE of Wisconsin,
Plaintiff-Appellant-Petitioner,

v.

Jim H. RINGER,
Defendant-Respondent.

Supreme Court

*No. 2008AP652–CR. Oral argument February 10, 2010.
—Decided July 8, 2010.*

2010 WI 69

(Also reported in 785 N.W.2d 448.)

For the plaintiff-appellant-petitioner the cause was argued by *Michael J. Losse,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-respondent there was a brief by *Thomas O. Mulligan and the Mulligan Law Office,* Spooner, and oral argument by *Thomas O. Mulligan.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished per curiam decision of the court of appeals[1] that affirmed an order in limine by the Barron County Circuit Court, Timothy M. Doyle, Judge. Jim H. Ringer (Ringer) was charged with repeated sexual assault of a child in violation of Wis. Stat. § 948.025(1)(ar) (2005–06).[2] The circuit court granted Ringer's motion in limine, allowing him to introduce at

---

[1] *State v. Ringer,* No. 2008AP652–CR, unpublished slip op. (Wis. Ct. App. June 18, 2009).

[2] Wisconsin Stat. § 948.025 (2005–06), "Engaging in repeated acts of sexual assault of the same child," provides:

> (1) Whoever commits 3 or more violations under s. 948.02(1) or (2) within a specified period of time involving the same child is guilty of:
>
> . . . .
>
> (ar) A Class B felony if fewer than 3 of the violations were violations of s. 948.02(1)(a) but at least 3 of the violations were violations of s. 948.02(1)(a) or (b).

The relevant provisions of Wis. Stat. § 948.02 (2005–06), "Sexual assault of a child," are as follows:

> (1) First Degree Sexual Assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of one of the following:
>
> (a) If the sexual contact or sexual intercourse resulted in great bodily harm to the person, a Class A felony.
>
> (b) If the sexual contact or sexual intercourse did not result in great bodily harm to the person, a Class B felony.

Wisconsin Stat. §§ 948.02(1) and 948.025(1) (2005–06) were repealed and recreated by 2007 Wis. Act 80, §§ 12 and 13 (codified as amended at Wis. Stat. §§ 948.02(1) and 948.025(1) (2007–08)). 2007 Wis. Act 80 took effect March 27, 2008. Ringer

trial evidence that the child complainant made prior allegedly untruthful allegations of sexual assault against her biological father, Christopher H. (Christopher). On appeal, the State argues that the circuit court erroneously exercised its discretion when it deemed the evidence admissible. We agree and therefore reverse the court of appeals' decision.

¶ 2. This case presents the following issues: (1) whether the circuit court erroneously exercised its discretion when it granted Ringer's motion in limine, allowing him to introduce at trial evidence that the child complainant made prior allegedly untruthful allegations of sexual assault against her biological father, and if not, (2) what form the evidence may take at trial.

¶ 3. We conclude that the circuit court erroneously exercised its discretion when it granted Ringer's motion in limine, allowing him to introduce at trial evidence that the child complainant made prior allegedly untruthful allegations of sexual assault against her biological father. Such evidence is admissible only if the following three criteria are satisfied: (1) the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3 (2007–08);[3] (2) the evidence is material to a fact at issue in the case; and (3) the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature. *State v. DeSantis,* 155 Wis. 2d 774, 785, 456 N.W.2d 600 (1990). In this case, the circuit court erroneously exercised its discretion when it determined that the proffered evi-

was charged on May 10, 2007, and is therefore subject to the 2005–06 version of the statutes.

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

dence fits within § 972.11(2)(b)3.[4] The circuit court erred by concluding that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault against her biological father. Because we conclude that evidence of the child complainant's alleged prior untruthful allegations of sexual assault is not admissible at trial, we need not address what form the evidence may take if admitted.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 4. On May 10, 2007, Ringer was charged with repeated sexual assault of a child. The State alleged that between September 2006 and May 6, 2007, Ringer repeatedly sexually assaulted twelve-year-old Amber, his then adopted daughter.[5] According to the complaint, the assaults occurred at least weekly and consisted of touching Amber's vaginal area and the nipple area of her breasts both over and under her clothing, "humping" against her, placing his finger inside her vagina, pushing her hand onto his penis both over and under his clothing, and attempting to put his penis inside her mouth. The circuit court found probable cause that Ringer committed a felony, and he was bound over for trial.

¶ 5. On October 10, 2007, Ringer filed a motion in limine seeking, inter alia, to admit evidence at the jury trial of Amber's alleged prior untruthful allegations of

[4] Because we conclude that the first criterion is not satisfied, we need not discuss the other two. *See State v. Moats*, 156 Wis. 2d 74, 110, 457 N.W.2d 299 (1990).

[5] The record indicates that Ringer has since voluntarily terminated his parental rights to Amber. So too has Amber's biological mother, Rebecca.

sexual assault against her biological father, Christopher, pursuant to Wis. Stat. § 972.11(2)(b)3.[6] Ringer argued that under the admissibility standard set forth in *DeSantis,* the circuit court could conclude from the proffered evidence that a reasonable person could infer that Amber made prior untruthful allegations of sexual assault against Christopher.

¶ 6. The circuit court requested that counsel submit to the court "an agreed upon packet containing all records and reports in any way describing allegations of sexual abuse or sexual assault made by [Amber] at any time against any individual." Among those records was an incident report by the Rusk County Sheriff's Department, dated May 2, 2005. Amber and her biological mother, Rebecca, reported to the sheriff's department that Christopher touched Amber's breasts, vagina, and buttocks over the weekends of April 16 through April 17, 2005, and April 23 through April 24, 2005. Subject

---

[6] Wisconsin Stat. § 972.11 provides, in relevant part:

(2)(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b) If the defendant is accused of a crime under s. 940.225, 948.02, 948.025, 948.05, 948.051, 948.06, 948.085, or 948.095, or under s. 940.302(2), if the court finds that the crime was sexually motivated, as defined in s. 980.01(5), any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

. . . .

(3) Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

to her biological parents' then joint custody arrangement, Amber spent those weekends with Christopher at his brother's house. Amber reported that she went to sleep in Christopher's bed, and he thereafter climbed into bed with her and began to touch her breasts, vagina, and "behind" underneath her clothing. As indicated by the incident report, "Amber stated that [Christopher] never touched her with his penis nor did he ever insert anything into her vagina or buttocks. She said that he moved his fingers around."

¶ 7. On May 2, 2005, Investigator David Hibbard (Investigator Hibbard) of the Rusk County Sheriff's Department interviewed Christopher regarding Amber's report. The interview was documented in a separate incident report, dated May 3, 2005. Christopher acknowledged that Amber stayed at his brother's house over the indicated weekends and that he and Amber slept in the same bed on the nights of April 16 and April 17, 2005. According to the incident report, Christopher stated that he rubbed Amber's stomach area over her clothing "for about ten to fifteen minutes" while she was sleeping:

> Christopher went on to say that while he was rubbing Amber's stomach, Amber's shirt rode up towards her breasts and then the tips of his fingers "may have" "bumped" the bottom portion of her breasts. However, Christopher said that although he may have touched her breast, he did not remember it happening. . . . Then Christopher was asked if he touched her breast intentionally or if it was an accident, and he immediately claimed it was an "accident". As the interview continued, Christopher also said that he may have placed his hand on Amber's breast just as he was "drifting off to sleep". But, again Christopher stated he did not "recall" this happening. Then Christopher said, "I'm not saying it did happen and I'm not saying it didn't happen", but "I do not know".

359

Christopher later indicated that he did not touch Amber's breasts, but he did touch the bottom portion of her bra. He denied touching Amber's vaginal area and her buttocks.

¶ 8. Christopher also provided a voluntary written statement to the Rusk County Sheriff's Department, which was signed and dated May 2, 2005. Christopher wrote, "I don't recall touching my daughter's breast or vagina but while rubbing her stomach may have bumped the bottom of her bra if [sic] I did touch her breast it was not in a sexual way."

¶ 9. The sheriff's department referred the matter to the Rusk County District Attorney's office, but the district attorney, Kathleen A. Pakes (Attorney Pakes), declined to prosecute Christopher. As stated in her affidavit filed with the circuit court on October 23, 2007, Attorney Pakes had "no reason to believe [Amber] was lying about the assault" and was "unaware of any finding that [she] lied." Nevertheless, Attorney Pakes declined to prosecute because she "had no corroborating facts, circumstances, physical evidence, or witnesses" and accordingly could not rebut an allegation at trial that Amber was lying. Attorney Pakes concluded, "Do I think it happened? Yes. Did I think I could prove it? No. Thus, this case was treated as a no process."

¶ 10. Beginning on January 4, 2008, and continuing on January 24, 2008,[7] the circuit court held an evidentiary hearing on Ringer's motion in limine. The

---

[7] Christopher and his brother, Richard H. (Richard), failed to appear at the hearing on January 4, 2008, in violation of subpoenas served upon them by Ringer's counsel. Christopher and Richard were therefore held in willful contempt of court, the purging of which was subject to their appearance at the rescheduled hearing on January 24, 2008. Christopher and Richard so appeared, and the hearing was continued.

court determined that pursuant to *DeSantis,* in order for Ringer to introduce at trial evidence of Amber's alleged prior untruthful allegations of sexual assault, he had to make a showing to the court of "sufficient evidence to support a reasonable person's finding that [Amber] made prior untruthful allegations."[8]

¶ 11. Ringer called both Christopher and his brother, Richard, to testify.[9] Christopher testified that

---

[8] The record reveals some back-and-forth between the circuit court and Ringer's counsel regarding the defendant's burden of proof under *State v. DeSantis,* 155 Wis. 2d 774, 456 N.W.2d 600 (1990):

> Attorney Norine [counsel on behalf of Ringer]: [J]ust to address the standard . . . [w]e have a degree of proof that would allow a reasonable person to infer that false allegations have been made, and there are two things I'd like to say about that standard, because I don't think—

> The Court: Excuse me, Mr. Norine, I think it's stronger than an inference, I think it's a finding.

> Attorney Norine: A finding, yes.

> The Court: Inferences are pretty vague things, but this language I'm looking at [in *DeSantis*] indicates I need to find that a reasonable person could find that a prior untruthful allegation was made.

> Attorney Norine: I may be quoting it wrong, but I seem to remember it as being—Your Honor making a finding that a reasonable person could infer. Now if I'm wrong, I will certainly stand corrected . . . .

[9] Bonnie Kurtz, who provided foster care services to Amber in 1999, also testified at the hearing. Kurtz's testimony related to allegations Amber made in May 1999 concerning male foster children who "did sex" with her. Ringer originally argued that those allegations also constituted prior untruthful allegations of sexual assault under Wis. Stat. § 972.11(2)(b)3. However, he abandoned that argument in the circuit court and instead focused only on Amber's allegations against Christopher. The 1999 allegations are therefore not at issue on appeal.

he never engaged in any sexual contact or touching with Amber. He acknowledged physical contact with her, consisting of "[t]ickling, wrestling, just basically goofing around," but maintained that such contact was never of a sexual nature. Christopher conceded sleeping in the same bed with Amber but "[o]nly if she got scared or whatever and came and climbed in while [he] was sleeping." When questioned at the evidentiary hearing regarding the statements he made to Investigator Hibbard, Christopher offered the following testimony:

> Q [Attorney Norine, counsel on behalf of Ringer]: You said, for example, "I did touch her breast. It was not in a sexual way." Do you remember making that statement?
>
> A [Christopher]: I couldn't tell you what all I put in my statement because I don't recall, but offhand, I'm sure it's something to that extent.
>
> Q: All right. And did you say at some point something to the effect of "I might have done it and I might not have done it," something to that effect?
>
> A: What I remember saying is that if I did it, I had done it in my sleep and wasn't aware of it.

¶ 12. On cross-examination, Christopher recalled sleeping in the same bed as Amber on the evenings of April 16 and April 17, 2005. He also remembered telling Investigator Hibbard "something to [the] effect" of the fact that he rubbed Amber's stomach area over her clothing while she was sleeping. While he specifically recalled telling the investigator that he may have bumped the bottom portion of Amber's bra, as opposed to her breast, he did not refute the latter:

> Q [Attorney Babbitt, counsel on behalf of the State]: Did you tell the officer that you may have touched her breast, but you did not remember it happening?

A [Christopher]: I would say that would be a true statement.

Q: Do you remember telling the officer that if you had touched her breast intentionally or if it was an accident, you had said it was an accident?

A: I said it would have been an accident because I would never touch her breasts intentionally.

. . . .

Q: Do you recall telling the officer, quote, I'm not saying it did happen, and I'm not saying it didn't happen, closed quote, but, quote, I do not know, closed quoted?

A: I remember saying that if it happened it would have been in my sleep.

On redirect, Christopher clarified that "[a]ny touching of [Amber's] private parts was purely accidental, never intentional."

¶ 13. Christopher's brother, Richard, also testified at the evidentiary hearing. By the time of the hearing, Christopher had lived with Richard for four or five years, and it was at Richard's house that Christopher allegedly sexually assaulted Amber. Richard testified that he never observed what he would consider improper sexual contact between Christopher and Amber and never noticed anything about Amber's behavior or demeanor that would give rise to such a suspicion. While he had no recollection of Christopher and Amber sleeping together in the same bed in spring of 2005, he did acknowledge that "[w]hen Amber was younger if she had nightmares she'd go in and lay down with her dad because she was scared."

¶ 14. In addition, Ringer filed with the court a portion of Amber's purported medical record, which indicated that on September 12, 2005, she "denie[d] sexual activity" to her physician.

363

¶ 15. The State argued that Ringer failed to bring forth sufficient evidence to support a reasonable person's finding that Amber made prior untruthful allegations of sexual assault against Christopher. Because Christopher admitted that he may have touched Amber in an intimate area, claiming that any such touching was accidental, the State contended that his testimony actually confirmed Amber's allegations that Christopher touched her in a sexual manner.

¶ 16. The circuit court found that based on the testimony, "a reasonable person could infer that the prior allegations concerning Christopher [] were untruthful" and therefore determined that Ringer was entitled to introduce at trial evidence of Amber's alleged prior untruthful allegations of sexual assault against Christopher.[10] The court arrived at its determination based upon the competing inferences raised by Amber's statements to the sheriff's department versus Christopher's statements to Investigator Hibbard and his testimony at the hearing.

¶ 17. On one hand, the court acknowledged that Amber accused Christopher of touching her breasts, vagina, and buttocks. On the other hand, the court found that Christopher denied engaging in any intentional sexual contact or touching with Amber, both in

---

[10] In its oral ruling, the circuit court did not make clear what type of evidence Ringer was permitted to introduce at trial, stating, "The form of that evidence, I guess I don't know at this point." Ringer's counsel acknowledged that as an "entire other open question" and indicated that Ringer would argue that he is entitled to introduce extrinsic evidence to prove the untruthfulness of Amber's allegations—specifically the witnesses who testified at the hearing and "whatever other evidence [he] can produce on the question." The court responded, "Well I think you're entitled to do that."

the interview with the investigator and at the hearing. While recognizing that Christopher "admit[ted] that he may have had incidental or accidental contact with his daughter's breast or bra," the court noted that he "denie[d] touching her breast or bra for any purpose of sexual gratification" and was not charged in connection with the incident.[11]

¶ 18. Beyond those competing inferences, even the circuit court could not conclude "with any certainty" that Amber's allegations against Christopher were untruthful:

> The bottom line is, I can't conclude or find with any certainty—we know the allegation was made, but I can't find that it was truthful or untruthful with any degree of certainty. Is there an inference that the allegations were untruthful? Yeah, there is an inference. That inference is supported by the statements made by Christopher [] to both Investigator Hibbard and his sworn testimony here today. . . .

¶ 19. On February 4, 2008, the circuit court issued a written order, finding that pursuant to Wis. Stat. § 972.11(2)(b)3, "a reasonable person could reasonably infer that [Amber] made prior untruthful allegations of

---

[11] The circuit court noted that Attorney Pakes averred in her affidavit that she thought Christopher committed the sexual assault, but the court determined "that isn't worth much":

> Prosecutors make those decisions all day long every day and they decide to charge cases they think they have some prospect of prevailing on, and for today's purposes, it just doesn't mean much what [Attorney] Pakes thinks or feels about the ultimate guilt of this gentleman because he was never charged and he was never tried and he was never convicted.

The court also discounted the significance of Amber's medical record and Richard's testimony.

sexual assault against [Christopher]." The court further found that the proffered evidence of the alleged prior untruthful allegations was material to a fact in issue in Ringer's case and that its probative value outweighed its prejudicial effect. Accordingly, the court ordered that Ringer was allowed to introduce at trial evidence of Amber's alleged prior untruthful allegations against Christopher.

¶ 20. The State filed an interlocutory appeal, arguing that the circuit court erroneously exercised its discretion by permitting Ringer to introduce such evidence. The State also argued that, even if Ringer prevailed on that threshold issue, the circuit court erred by not limiting the form of the evidence to cross-examination of Amber pursuant to *State v. Rognrud,* 156 Wis. 2d 783, 457 N.W.2d 573 (Ct. App. 1990).

¶ 21. On June 18, 2009, in a per curiam decision, the court of appeals affirmed the circuit court's order in limine. *State v. Ringer,* No. 2008AP652–CR, unpublished slip op. (Wis. Ct. App. June 18, 2009). Applying the three-part test set forth in *DeSantis,* the court of appeals concluded that the circuit court appropriately exercised its discretion in allowing Ringer to introduce at trial evidence of Amber's alleged prior untruthful allegations of sexual assault against Christopher. *Id.,* ¶ 15. First, the court of appeals concluded that the circuit court properly determined that the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3. Accepting Christopher's testimony as true, the court of appeals found "a reasonable basis to infer [Amber] falsely accused him of touching her vagina and buttocks and that [Christopher] did not intentionally touch [Amber's] breasts for any improper purpose." *Id.* Second, the court of appeals concluded that the circuit court properly exercised its discretion in determining

that the evidence was material to Ringer's defense. *Id.*, ¶ 16. The court of appeals reasoned that the record shows factual similarities between Amber's allegations against Christopher and those against Ringer, and the two allegations were close enough in time to avoid diminishing their material comparability. *Id.* Third, the court of appeals concluded that the circuit court reasonably determined that the evidence of the alleged untruthful allegations against Christopher was sufficiently probative to outweigh its prejudicial effect. *Id.*, ¶ 18. The court of appeals stated that Amber's alleged "[p]rior untruthful accusations of a similar nature made a year and a half earlier against her biological father could be a crucial factor in determining credibility and presenting a defense." *Id.*

¶ 22. In addition, the court of appeals concluded that the State forfeited its argument that the circuit court erred by not limiting the method by which Ringer could inquire into the prior allegations at trial. *Id.*, ¶ 20 ("We do not generally consider issues raised for the first time on appeal.").

¶ 23. The State petitioned this court for review, which we granted on September 24, 2009. We now reverse the court of appeals' decision.

## II. STANDARD OF REVIEW

¶ 24. The admission of evidence is subject to the circuit court's discretion. *State v. Jackson,* 216 Wis. 2d 646, 655, 575 N.W.2d 475 (1998). We will not disturb the circuit court's decision to admit evidence unless the court erroneously exercised its discretion. *DeSantis,* 155 Wis. 2d at 777 n.1. If our review of the record indicates that the circuit court applied the wrong legal

standard in the exercise of its discretion or that the facts of record fail to support the circuit court's decision, the circuit court erroneously exercised its discretion. *Id.*; *see also Jackson,* 216 Wis. 2d at 655. In this case, we conclude that the circuit court erroneously exercised its discretion because the record does not support its conclusion that a jury could reasonably find that Amber made prior untruthful allegations of sexual assault.

## III. ANALYSIS

¶ 25. Wisconsin's rape shield law, Wis. Stat. § 972.11, generally prohibits the introduction of any evidence of the complainant's prior sexual conduct "regardless of the purpose." § 972.11(2)(c); *see also State v. Pulizzano,* 155 Wis. 2d 633, 643–44, 456 N.W.2d 325 (1990); 7 Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 420.4, at 283 (3d ed. 2008). The rape shield law was enacted " 'to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations.' " *State v. Carter,* 2010 WI 40, ¶ 39, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting *State v. Dunlap,* 2002 WI 19, ¶ 19, 250 Wis. 2d 466, 640 N.W.2d 112). The law reflects the legislature's determination that evidence of a complainant's prior sexual conduct is largely irrelevant "or, if relevant, substantially outweighed by its prejudicial effect." *Pulizzano,* 155 Wis. 2d at 644; *see also Carter,* 324 Wis. 2d 640, ¶ 39; *DeSantis,* 155 Wis. 2d at 784–85. Section 972.11's broad evidentiary prohibition is subject to three statutory exceptions, which "encompass those limited factual scenarios in which the legislature has determined that evidence of a complainant's sexual history may be sufficiently probative of a mate-

rial issue to overcome the prejudicial nature of such evidence." *Jackson,* 216 Wis. 2d at 657–58; *see* § 972.11(2)(b)1–3. This case concerns the application of the third exception: "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." § 972.11(2)(b)3.

■

¶ 26. A defendant may introduce at trial evidence of the complainant's alleged prior untruthful allegations of sexual assault "only after close judicial scrutiny." *DeSantis,* 155 Wis. 2d at 785; *see also Jackson,* 216 Wis. 2d at 658 ("[M]erely offering proof of the general type described in a particular exception is not enough to defeat the rape shield statute."). Admission of the evidence is subject to Wis. Stat. § 971.31(11), *see* Wis. Stat. § 972.11(2)(b), which requires that the circuit court first determine that the evidence is "material to a fact at issue" in the underlying case and "of sufficient probative value to outweigh its inflammatory and prejudicial nature."

■

¶ 27. Accordingly, pursuant to the test set forth in *DeSantis,* evidence of the complainant's alleged prior untruthful allegations of sexual assault is admissible only if the circuit court first makes three determinations: (1) the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3; (2) the evidence is material to a fact at issue in the case; and (3) the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature. 155 Wis. 2d at 785.

¶ 28. In this case, we conclude that the circuit court erroneously exercised its discretion when it determined that the proffered evidence of Amber's alleged prior untruthful allegations of sexual assault fits within Wis. Stat. § 972.11(2)(b)3. Ringer's failure to satisfy his

burden of production under § 972.11(2)(b)3 is dispositive of our analysis; thus, we need not further discuss the other two criteria. *See State v. Moats,* 156 Wis. 2d 74, 110, 457 N.W.2d 299 (1990) ("If the defendant fails to meet this burden, the circuit court must conclude that the evidence is inadmissible under the statute and the analysis ends."); *DeSantis,* 155 Wis. 2d at 788 ("If the evidence does not meet this basic threshold, the circuit court must conclude that the evidence does not come within the exception provided by sec. 972.11(2)(b)3."). We therefore address only the first of the *DeSantis* three-part test.

### A. Whether the Proffered Evidence Fits Within Wis. Stat. § 972.11(2)(b)3

¶ 29. Before admitting evidence of the complainant's alleged prior untruthful allegations of sexual assault, the circuit court must first determine whether the evidence fits within Wis. Stat. § 972.11(2)(b)3; that is, whether the defendant has established a sufficient factual basis for allowing the jury to hear the evidence. *DeSantis,* 155 Wis. 2d at 786. As a preliminary matter, we will clarify the defendant's burden of production under the first part of the *DeSantis* test.

¶ 30. In *DeSantis,* this court concluded that "the defendant should produce evidence at the pre-trial hearing sufficient to support a *reasonable person's finding* that the complainant made prior untruthful allegations." *Id.* at 787–88 (emphasis added). The circuit court must make a preliminary finding based upon the defendant's offer of proof that "the jury could *reasonably find* that the complainant made prior untruthful allegations." *Id.* at 788 (emphasis added).

370

¶ 31. The *DeSantis* court continued: "In other words, in order to admit evidence of untruthful prior allegations of sexual assault, a circuit court must be able to conclude from the proffered evidence that a reasonable person could *reasonably infer* that the complainant made prior untruthful allegations of sexual assault." *Id.* (emphasis added). We recognize the language inconsistency of "find" and "infer" and appreciate the confusion that may arise therefrom. We therefore clarify that in order to admit evidence of alleged prior untruthful allegations of sexual assault under Wis. Stat. § 972.11(2)(b)3, the circuit court must first conclude from the proffered evidence that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault.

¶ 32. We arrive at that determination by examining Wis. Stat. § 901.04, which governs preliminary questions concerning the admissibility of evidence and cross-references Wis. Stat. § 972.11(2). Wisconsin Stat. § 901.04(1) provides: "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the judge, subject to sub. (2) and . . . [§] 972.11(2)." Wisconsin Stat. § 901.04(2) recognizes the doctrine of conditional relevancy; that is, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a *finding* of the fulfillment of the condition." (Emphasis added.) In other words, "[t]he judge decides whether there is (or will be) sufficient evidence of the condition; the jury determines ultimately whether the condition exists." Blinka, *supra* § 104.2, at 35. *DeSantis* applies the conditional relevancy analysis of § 901.04(2). *See* 155 Wis. 2d at 786 n.5; Blinka, *supra* § 104.2, at 35 n.5;

§ 420.4, at 288. Under the admissibility standard set forth in *DeSantis,* the issue is not whether the judge is convinced by a preponderance of the evidence that the complainant made prior untruthful allegations of sexual assault.[12] Rather, the judge determines whether a jury, acting reasonably, could find that it is more likely than not that the complainant made prior untruthful allegations of sexual assault. *See* Blinka, *supra* § 104.2, at 35.

¶ 33. For example, in *DeSantis,* this court concluded that the circuit court appropriately exercised its discretion when it excluded evidence of the complainant's alleged prior untruthful allegations of sexual assault because, based on the pre-trial testimony, a reasonable jury could not find that the complainant made prior untruthful allegations. *See* 155 Wis. 2d at 790–91. In that case, DeSantis filed a pretrial motion seeking to introduce evidence of the complainant's prior untruthful allegations of sexual assault. *Id.* at 778. The circuit court held an evidentiary hearing to determine whether it would admit the evidence. *Id.* at 779. DeSantis produced a witness who had been the complainant's neighbor at her college dormitory during the 1985–86 school year. *Id.* The neighbor testified that in fall 1985, the complainant informed her that she had been raped by a stranger outside the dormitory. *Id.* However, according to the neighbor, in spring 1986, the complainant recanted that she had been raped and instead described the incident as a stranger putting his arm around her. *Id.* Neither the complainant nor the neighbor ever reported the incident to campus authorities or the police. *Id.*

---

[12] We rejected that argument in *DeSantis,* 155 Wis. 2d at 787–88, and similarly do so today.

¶ 34. At DeSantis's trial, outside the jury's presence, the complainant denied ever telling her neighbor that she had been raped. *Id.* at 781. Nevertheless, she testified that in 1985, in front of her dormitory, a stranger put his arm around her, unsolicited. *Id.* After hearing the complainant's testimony, the circuit court determined that DeSantis was not permitted to introduce evidence before the jury concerning the complainant's prior allegations of sexual assault. *Id.* As its grounds, the circuit court cited the remoteness and irrelevancy of the evidence. *Id.*

¶ 35. On appeal, this court agreed with the circuit court and concluded that, even accepting the neighbor's testimony as true, the complainant's 1985 allegations of a nonconsensual assault could not be interpreted as untruthful:

> Both [the neighbor] and the complainant testified that the occurrence in autumn 1985 involved a nonconsensual touching. The complainant asserted she was forcibly assaulted by a stranger against her will. She never recanted this assertion. [The neighbor's] testimony does not impeach the complainant's credibility about charging a nonconsensual touching. No matter who is believed, the complainant's 1985–86 statements can be interpreted as truthful allegations of a nonconsensual assault. . . .

*Id.* at 790–91.

¶ 36. Turning to the case at issue, we conclude that the circuit court erroneously exercised its discretion when it determined that the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3. The circuit court erred by concluding that a jury could reasonably find that Amber made prior untruthful allegations of sexual assault against Christopher.

¶ 37. First, unlike the complainant in *DeSantis,* Amber never allegedly made contradictory statements regarding the sexual assault taking place. The record reveals that Amber has never recanted with respect to her assertion that Christopher touched her breasts, vagina, and buttocks in spring 2005. We note that in *DeSantis,* the neighbor's testimony, if believed, indicated that the complainant either recanted her allegations or at least vacillated with respect to the type of nonconsensual assault she alleged. *See* 155 Wis. 2d at 779. Despite the complainant's divergent statements regarding the alleged assault, this court concluded that said evidence was insufficient to support a reasonable finding that the allegations were untruthful. *See id.* at 790–91. In comparison, Amber has never recanted her allegations against Christopher. The fact that she has never recanted her allegations weighs against a jury's finding that the allegations were untruthful.

¶ 38. Second, Christopher's statements to Investigator Hibbard and his testimony at the evidentiary hearing may actually corroborate, rather than discredit, Amber's allegations that he touched her breasts. According to the incident report, Christopher stated that while rubbing Amber's stomach, her shirt rode up, and he "may have" "bumped" her breasts, and he may have placed his hand on her breast while "drifting off to sleep." He did not refute these statements at the hearing and instead testified that any touching of Amber's breasts was accidental, done in his sleep, or not of a sexual nature. However, whether the touching was intentional or, as the circuit court stated, for "sexual gratification" does not change the fact that Christopher acknowledged that the touching may have occurred. Whether the State can prove that Christopher committed a sexual assault beyond a reasonable doubt and

whether he had a valid defense to the allegations does not necessarily control the analysis as to Amber's truthfulness. In other words, a jury could reasonably find that Amber truthfully alleged that she was sexually assaulted regardless of whether from Christopher's perspective the touching was for sexual gratification. The fact that Christopher may have a valid defense does not dictate a finding that her allegations were untruthful.

¶ 39. Moreover, even though Christopher may have consistently denied touching her vagina and buttocks, that denial alone is not sufficient to support a jury's finding that Amber's allegations were untruthful. As we made clear in *Moats,* "the distinction as to type of assault is irrelevant to this analysis."[13] 156 Wis. 2d at 110. Rather, the admissibility of evidence under Wis.

---

[13] In *Moats,* this court agreed with the circuit court that a variation between the complainant's version of the type of prior sexual assault that occurred and the perpetrator's version was not alone sufficient to demonstrate that the prior allegations of sexual assault were untruthful. 156 Wis. 2d at 110–11. In that case, the five-year-old complainant made prior allegations of sexual assault against two men and described the sexual assaults as involving penis to vagina contact. *Id.* at 103–04. However, the two men were charged with and convicted of hand to vagina contact and oral contact, respectively. *Id.* at 106. Moreover, one of the perpetrators specifically denied engaging in penis to vagina contact with the child complainant. *Id.* at 109. This court concluded that the circuit court did not erroneously exercise its discretion when it refused to admit the evidence as prior untruthful allegations. *Id.* at 110. The circuit court ruled, and this court agreed, that the distinction as to the type of prior sexual assault that occurred was irrelevant to a determination of whether the complainant's prior allegations were untruthful. *Id.* For purposes of excluding the evidence under Wis. Stat.

Stat. § 972.11(2)(b)3 "is to be reviewed in terms of occurrence and whether a prior allegation of the general occurrence of a sexual assault is later recanted by the complainant or proved to be false by the defendant." *Moats,* 156 Wis. 2d at 110. In this case, Amber has never recanted, and Ringer failed to put forth evidence from which a circuit court could conclude that a jury could reasonably find that Amber's prior allegations of sexual assault were false. Merely because Christopher's version as to the type of touching that occurred differs from Amber's version is not alone enough to support a jury's finding that the allegations were untruthful.

██ ██

¶ 40. Finally, the fact that Christopher was never prosecuted in connection with Amber's allegations, in and of itself, does not support a finding that the allegations were untruthful. "Our cases have repeatedly acknowledged a prosecutor's broad discretion in determining whether to charge an accused." *State v. Krueger,* 224 Wis. 2d 59, 67, 588 N.W.2d 921 (1999); *see also State v. Kenyon,* 85 Wis. 2d 36, 45, 270 N.W.2d 160 (1978) (describing the district attorney's discretion in determining whether to commence a prosecution as "almost limitless"). A district attorney is charged with administering justice, not obtaining convictions. *State v. Karpinski,* 92 Wis. 2d 599, 607, 285 N.W.2d 729 (1979). Accordingly, the district attorney is not required to prosecute all cases, including those in which it appears that the law has been violated. *Id.* In this case, Attorney Pakes chose not to prosecute Christopher despite her belief that the sexual assault occurred. A district attorney's discretionary belief that she cannot prove

972.11(2)(b)3, what mattered was that the two men admitted to having prior sexual contact with the child complainant. *Id.* at 111.

certain allegations beyond a reasonable doubt does not conclusively support a determination that the complainant's allegations were untruthful.

¶ 41. In summary, the circuit court erred when it concluded that a jury could reasonably find that Amber made prior untruthful allegations of sexual assault against Christopher. The circuit court therefore erroneously exercised its discretion when it determined that the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3. Ringer failed to bring forth evidence from which a circuit court could conclude that a jury could reasonably find that Amber's allegations against Christopher were untruthful. At most, Ringer's offer of proof shows that there were competing versions of what occurred and that Christopher may have a defense to the allegations. In this case, admitting evidence of Amber's prior allegations against Christopher could result in a trial within a trial, confuse the issues as they relate to Ringer's case, and invite the jury to speculate concerning Amber's truthfulness and whether the prior sexual assault occurred. These facts are simply too complex to support a jury's finding that Amber was untruthful without conducting a trial within a trial. The evidence would not be relevant to whether Amber made false allegations against Ringer unless the jury first determined that Amber made up the allegations against Christopher. However, we have concluded that Ringer did not produce evidence from which a jury could reasonably find that Amber's allegations against Christopher were untruthful. Despite the fact that the jury is instructed not to speculate, *see* Wis JI—Criminal 140, in this case, the jury would have to speculate in order to determine that Amber was untruthful. We refuse to extend § 972.11(2)(b)3 so far.

¶ 42. Because we conclude that evidence of Amber's alleged prior untruthful allegations of sexual assault is not admissible at trial, we need not address what form the evidence may take if admitted under Wis. Stat. § 972.11(2)(b)3.

## IV. CONCLUSION

¶ 43. We conclude that the circuit court erroneously exercised its discretion when it granted Ringer's motion in limine, allowing him to introduce at trial evidence that the child complainant made prior allegedly untruthful allegations of sexual assault against her biological father. Such evidence is admissible only if the following three criteria are satisfied: (1) the proffered evidence fits within Wis. Stat. § 972.11(2)(b)3; (2) the evidence is material to a fact at issue in the case; and (3) the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature. *DeSantis*, 155 Wis. 2d at 785. In this case, the circuit court erroneously exercised its discretion when it determined that the proffered evidence fits within § 972.11(2)(b)3. The circuit court erred by concluding that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault against her biological father. Because we conclude that evidence of the child complainant's alleged prior untruthful allegations of sexual assault is not admissible at trial, we need not address what form the evidence may take if admitted.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the majority opinion. I write separately to explain what the second issue is in the present case.

¶ 45. The second issue is described by the majority opinion in ¶ 2 as "what form the evidence may take at trial." The parties frame this issue as follows: Did the circuit court erroneously exercise its discretion in concluding that the purported false prior accusation could be proven at Ringer's trial by extrinsic evidence?

¶ 46. The circuit court held that extrinsic evidence could be introduced. The State argued in the court of appeals and here that extrinsic evidence is barred by *State v. Rognrud,* 156 Wis. 2d 783, 457 N.W.2d 573 (Ct. App. 1990). The court of appeals concluded that the State had waived the issue of the use of extrinsic evidence to prove prior false accusations by failing to address the merits of the issue at the circuit court.

¶ 47. Neither the majority opinion nor I address this issue.